UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 NOV 18  AM 8:51

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 5:16-cv-307 |
| DAVID J. DRISCOLL, | ) |
| | ) |
| Defendant. | ) |

**CIVIL COMPLAINT**

Plaintiff, the United States of America, by its attorney, Eugenia A. P. Cowles, Acting United States Attorney for the District of Vermont, alleges as follows:

1. This is a civil action by the United States of America against David J. Driscoll ("Driscoll").

2. Driscoll prepared an audited Financial Statement for October 31, 2009; reviewed Financial Statements dated April 30, 2010, and July 31, 2010; and a Draft audited Financial Statement for October 31, 2010 audit all for Isaacson Structural Steel, Inc. ("ISSI") with knowledge that the financial statements contained false information.

3. These financial statements prepared by Driscoll contained false information about the value of ISSI's inventory and Driscoll knew that ISSI used the financial statements for the purpose of influencing the actions of Passumpsic Savings Bank, Ledyard National

1

Bank, and Woodsville Guaranty Savings Bank, the accounts of which are insured by the FDIC, including changes and extensions of loans and the acceptance and substitution of security for loans.

4. Passumpsic Savings Bank, with a headquarters in St. Johnsbury, Vermont, lost at least two million dollars ($2,000,000) as a result of the October 31, 2009 Financial Statement and the July 31, 2010 Financial Statement for ISSI prepared by Driscoll and submitted by ISSI to Passumpsic Savings Bank in support of one of ISSI's loan applications.

## I.
## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1345 (United States as plaintiff).

6. Venue is proper in the District of Vermont pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged in this complaint occurred in this district.

## II.
## PARTIES

7. Plaintiff is the United States of America.

8. Defendant is David J. Driscoll, a New Hampshire resident and president of Driscoll & Co., a certified public accounting firm, which did business in New Hampshire and Vermont. Driscoll's accounting firm conducted audit work and tax accounting for a variety of businesses and individuals in Northern New England.

9. Driscoll and his accounting firm performed accounting work for ISSI since approximately 1985.

10. ISSI and its related companies were Driscoll's biggest account at his accounting firm.

11. Driscoll was also a board member of the Passumpsic Savings Bank from at least 2003 to 2011.

## III.
## THE FINANCIAL INSTITUTIONS REFORM, RECOVERY AND ENFORCEMENT ACT

12. The United States seeks civil penalties under the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 1833a ("FIRREA).

13. In 1989, Congress enacted FIRREA as part of a comprehensive legislative plan to reform and strengthen the banking system and the federal deposit insurance system that protects the public from bank failures. Toward that end, FIRREA authorizes civil enforcement of enumerated criminal predicate offenses – as established by a preponderance of the evidence – that affect financial institutions and certain governmental agencies.

14. There are several predicate criminal offenses that can form the basis of liability of FIRREA. See 12 U.S.C. § 1833a(c) (Title 18, Sections 215, 656, 657, 1005, 1006, 1007, 1014, 1344; Sections 287, 1001, 1032, 1341, and 1343, affecting a federally insured financial institution; and Title 15, Section 645(a)).

15. The criminal offense relevant to this case is 18 U.S.C. § 1014, which prohibits false statements of willful overvaluing of any property of security for the purpose of influencing certain federal agencies.

16. FIRREA's penalty provisions provide that the United States may recover civil penalties (paid to the United States Treasury) of up to $1 million per violation, or, for a continuing violation, up to $1 million per day or $5 million, whichever is less. 12 U.S.C. § 1833a(b)(1)-(2). The statute further provides that the penalty can exceed these limits to permit the United States to recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or loss. 12 U.S.C. § 1833a(b)(3).

17. The United States alleges that Driscoll violated 18 U.S.C. § 1014 affecting a federally insured financial institution, that Driscoll is civilly liable under FIRREA, and that the United States is entitled to recover as a civil penalty an amount equal to the losses of the financial institutions victimized by Driscoll.

## FACTUAL BACKGROUND

18. Isaacson Structural Steel, Inc. (ISSI) was a multimillion-dollar business in Berlin, New Hampshire. ISSI was a steel fabricator that acted as a subcontractor for commercial construction in New England. It went into bankruptcy protection in 2011, and it stopped operating in 2012.

19. From 2007 to early 2011, Steven Griffin ("Griffin") served as Vice President and Chief Financial Officer of ISSI, and Arnold Hanson ("Hanson") served as President and Chief Executive Officer of ISSI.

20. ISSI relied on large loans from Passumpsic Savings Bank (PSB) to operate from 2007 to 2011. The loans were too large for PSB alone, and PSB sought and obtained participation in the ISSI loans from Ledyard National Bank and Woodsville Guaranty Savings Bank.

21. The loans from PSB were based in large part on the value of ISSI's assets.

22. Driscoll's principal work for ISSI was a yearly audited financial statement of ISSI, the attendant tax returns for ISSI, and twice yearly reviewed financial statements.

23. ISSI's fiscal year was November 1 to October 31.

24. Driscoll and his firm worked on the audited financial statement between December and the following Spring.

25. Driscoll and his firm also created a reviewed financial statement for April and July, but these reviews involved no auditing of the asset numbers.

26. The audited financial statement represented the most important piece of financial information to PSB, other banks considering loans to ISSI, and to others looking as ISSI's finances, since a certified public accountant was standing behind it.

27. Driscoll was a long time member of the PSB board of directors.

28. The bankers at PSB and other local banks considering loans for ISSI relied on the fact that one of their board members was involved in the accounting for ISSI.

29. In 2006, Driscoll provided accounting advice to ISSI about including the value of certain change orders in the asset value for inventory on ISSI's financial statement.

30. In 2009, PSB demanded that ISSI hire Driscoll's firm to provide a more detailed review of assets used as collateral for the $10,000,000 line of credit, as of July 31, 2009. This increased review also occurred on April 30, 2010, and July 31, 2010.

31. In or about January 2010, during the October 31, 2009 audit process, Driscoll failed to perform any meaningful audit of ISSI's inventory figure, the bulk of which consisted of supposed change orders.

32. At that time, ISSI's inventory was inflated by millions of dollars. It remained inflated by millions of dollars throughout 2010 into 2011.

33. During 2010, ISSI had been communicating with PSB about getting a long-term SBA guaranteed loan.

34. By September 2010, Griffin was actively seeking financing help from PSB officials because of ISSI's mounting losses.

35. At the same time, PSB gave Griffin the SBA loan application paperwork.

36. In October 2010, Hanson began communicating with a consultant from Texas about selling ISSI.

37. The consultant from Texas asked for financial information at the beginning of the discussions.

38. One of the consultant's first questions after he received the balance sheet related to the high inventory figure.

39. After he got these questions from the consultant, Hanson did his own investigation of change orders in inventory and found problems.

40. Hanson met with Griffin and Driscoll about the change orders in inventory.

41. In late 2010 and before the SBA loan closing in December 2010, Driscoll explained that some old change orders had not been removed from inventory.

42. The PSB loan presentation package for the SBA loan in the amount of $2,000,000 shows that the bank relied on various pieces of false information in making its loan decision, including the 2009 audit, the July 2010 reviewed financial statement, and a borrowing base certificate ("BBC") from November 2010.

43. All of these documents contained inflated asset information.

44. For 2009 and 2010, Driscoll did not request any documents from ISSI attempting to justify ISSI's inventory number.

45. For the October 2010 audit, Driscoll did even less with regard to the inventory audit.

46. Just before the loan closing, the bankers began asking more questions about change orders.

47. Specifically, on December 15, 2010, a PSB official wrote to Hanson and Griffin about questions from Ledyard National Bank asking if unapproved change orders were being classified as inventory and whether doing so was consistent with Generally Accepted Accounting Principles ("GAAP").

48. Hanson responded saying that Driscoll approved the change order accounting and then explained the three steps of a change order.

49. Griffin then confirmed the GAAP treatment, stating that Driscoll pushed the inventory practice.

50. The loan closed December 16, 2010.

51. ISSI received the $2 million loan based on false inventory figures, including unapproved change orders, that Driscoll knew about.

52. Hanson, Griffin and Driscoll admitted to PSB in April 2011 that the inventory figure of $12 million dollars on ISSI's year-end 2010 financial statement was inflated by millions of dollars.

53. False statements about ISSI's assets submitted to PSB by ISSI and Driscoll were central to ISSI's borrowing from PSB.

## FIRST CAUSE OF ACTION
## FOR CIVIL PENALTIES UNDER FIRREA

54. The government incorporates by reference paragraphs 1 through 53 as if fully set forth in this paragraph.

55. By virtue of the conduct described above, and for the purpose of profiting from that conduct, Driscoll aided and abetted the submission of false statements to a financial institution, in violation of 18 U.S.C. § 1014. Driscoll knew of the criminal conduct described herein, or remained willfully blind to the criminal conduct.

56. These false statements affected a FDIC-insured financial institution doing business in Vermont.

57. Accordingly, Driscoll is liable to the United States for civil penalties as authorized under 12 U.S.C. § 1833a(b).

**WHEREFORE,** the United States requests judgment against defendant Driscoll as follows:

a. A judgment imposing a civil penalty against Driscoll up to the maximum amount allowed by law;

b. Such further relief as the Court deems just.

Dated at Burlington, in the District of Vermont, this 18th day of November, 2016.

UNITED STATES OF AMERICA

EUGENIA A. P. COWLES
Acting United States Attorney

By: *[signature]*

PAUL VAN DE GRAAF
NIKOLAS P. KEREST
Assistant U.S. Attorneys
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
